USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 12, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
HOWARD POWELL,                                        :
                                                      :
                              Plaintiff,              :    14 Civ. 6207 (KPF)
                                                      :
              v.                                      :    OPINION AND ORDER
                                                      :
DR. DORA B. SCHRIRO, *et al.*,                        :
                                                      :
                              Defendants.             :
                                                      :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

Plaintiff Howard Powell, proceeding *pro se*, asserts claims under 42 U.S.C. § 1983 against Dr. Dora B. Schriro, the former Commissioner of the New York City Department of Corrections (the "DOC"), and Rose Argo, the former warden of the Anna M. Kross Center on Rikers Island (the "AMKC") (collectively, "Defendants"), stemming from incidents alleged to have occurred while Plaintiff was confined at the AMKC. Presently before the Court is Defendants' unopposed motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    Plaintiff's Complaint

As relevant to the instant motion, Plaintiff alleged that he was incarcerated at the AMKC from April 2013 through at least August 2, 2014. (Compl. § II.C).  During this time, Plaintiff claims that his insulin was "given to [him] after breakfast and after dinner[,] plac[ing] [his] life in imminent danger[.]" (*Id.* at § II.D).  Plaintiff further avers that facility "lock downs in non-problem areas … deprived detainees in the entire jail of social services, recreation, counsel visits, visits, phone calls, legal-aid, law library, mail, showers[,] and [that] all prescribed medication [was] given in an untimely fashion, seriously affecting all the inmates in the jail." (*Id.*).  As a consequence of the untimely administration of his insulin and the improper facility lockdowns, Plaintiff alleges that he suffered a number of injuries, including "[being] overwhelmed with [the] undue hardship of enduring [] cruel and unusual punishment, mental anguish, violation of [his] diabetic health, and violation of [his] constitutional rights as a prisoner." (*Id.* at § III).

---

[1]  The facts alleged herein are drawn from the Complaint ("Compl.") (Dkt. #1); Defendants' Local Rule 56.1 Statement of Material Facts Not in Dispute ("Def. 56.1") (Dkt. #26); and the declarations ("[Name] Decl.") and exhibits thereto submitted with Defendants' brief. Citations to Defendants' Rule 56.1 Statement incorporate by reference the documents and deposition testimony cited therein.  For convenience, Defendants' brief in support of the motion for summary judgment will be referred to as "Def. Br." (Dkt. #22). Finally, the transcript of the parties' January 23, 2015 telephonic conference with the Court is referred to as "Tr."

2.	**Grievance Procedures at the AMKC**

The DOC provides inmates at the AMKC with a procedural framework, the Inmate Grievance and Request Program (the "IGRP"), for raising grievances relating to their confinement and medical treatment while incarcerated at the facility.  (Def. 56.1 ¶¶ 6-7).  Pursuant to the IGRP, which was in effect at all times relevant to this lawsuit, an inmate "affected by an issue, condition, practice, or action relating to [his] confinement may file a complaint (grievance) or request a service, assistance, or an accommodation with regard to any issue that may arise in connection with [his] incarceration." (Johnson Decl. ¶ 4, Ex. A at § II.A).  As delineated in the IGRP, claims that DOC personnel interfered with an inmate's medical treatment or access to medical care also fall within this framework.  (Def. 56.1 ¶ 11; Johnson Decl. Ex. A § IV.B.2.d).

Procedurally, the IGRP establishes a comprehensive, detailed, and layered scheme for raising and resolving inmate grievances.  (Johnson Decl. Ex. A).  As a threshold matter, an inmate must complete and submit a prescribed form within ten days of the complained-of condition or issue.  (Def. 56.1 ¶ 13; Johnson Decl. ¶ 8).  After the form is submitted, the grievance supervisor, with the assistance of the IGRP staff, has five business days to dismiss and close the grievance, refer the submission to the appropriate entity, or investigate the grievance and propose a resolution.  (Def. 56.1 ¶ 14; Johnson Decl. Ex. A at § IV.G.1).  The inmate is then permitted five days to either accept the resolution proposed by the grievance supervisor and IGRP staff or request a formal hearing before the Inmate Grievance Resolution Committee (the "IGRC").

(Def. 56.1 ¶ 15; Johnson Decl. ¶ 10). When the inmate requests a formal hearing, the IGRC must conduct a proceeding within five days of the request, and the IGRP allows inmates to appeal an adverse decision at this stage to the facility's commanding officer. (Def. 56.1 ¶ 16; Johnson Decl. ¶ 11). Finally, any decision by the commanding officer is appealable to the Central Office Review Committee (the "CORC"), whose decision constitutes the DOC's final disposition of the inmate's grievance. (Def. 56.1 ¶¶ 17-18; Johnson Decl. ¶¶ 12-13). An inmate who has not received a response at a particular phase in the IGRP process must file an appeal to the next review tier within ten days. (Def. 56.1 ¶ 19; Johnson Decl. ¶ 14).

In addition to the procedures set forth in the IGRP, inmates incarcerated at the AMKC are afforded a separate framework for raising grievances relating to the provision of health care services by Correctional Health Services ("CHS") and its contracted providers. (Def. 56.1 ¶ 20; Lawson Decl. Ex. A). Specifically, Department of Health and Mental Hygiene Interdisciplinary Policy 16: Patient Complaints and Requests for Second Opinions ("Policy 16"), which was in effect at all times relevant to this lawsuit, provides procedures for receiving, responding to, and appealing complaints concerning the provision of health care by non-DOC personnel. (Def. 56.1 ¶¶ 20, 22-23; Lawson Decl. ¶¶ 4, 6, 13). In the first instance, Policy 16 encourages inmates who are not satisfied with their health care to raise their concerns with the applicable provider. (Def. 56.1 ¶ 24; Lawson Decl. ¶ 8). "However, if a patient is dissatisfied with the outcome of this informal process he/she must file a

4

written complaint and place it in [the] 'Second Opinion/Complaint Box.'" (Lawson Decl. Ex. A at ¶ A.4). Assuming the complaint falls within the jurisdiction of Policy 16, the Complaint Coordinator[2] or a clinical supervisor will investigate the matter and propose a resolution. (Def. 56.1 ¶ 28). An inmate who is frustrated with the Complaint Coordinator's resolution must seek redress within seven days by depositing a written appeal in the "Second Opinion/Complaint Box." (*Id.* at ¶ 29). This appeal is then adjudicated by the director of the appropriate service, whose determination is considered a final disposition of the matter. (*Id.* at ¶ 30).

### 3. Plaintiff's Use of the AMKC Grievance Procedures

In the Complaint, which was completed using a model form provided by the United States District Court for the Southern District of New York, Plaintiff acknowledged that the AMKC maintained a grievance procedure, and averred that he had availed himself of this process. (Compl. § IV.B, D, E.1). Although Plaintiff purportedly wrote the AMKC warden in connection with his grievances, a subsequent review of the pertinent records revealed no evidence that Plaintiff utilized the IGRP process to file a grievance relating to either the untimely administration of insulin or the improper facility lockdowns alleged in the Complaint. (Compl. § IV.F.2, G; Johnson Decl. ¶ 16). A similar search for grievances filed by Plaintiff pursuant to Policy 16 yielded no complaints concerning the untimely administration of insulin. (Lawson Decl. ¶ 20).

---

[2]  The Complaint Coordinator is the Health Services Administrator for each facility or a designee. (Def. 56.1 ¶ 27).

5

Ultimately, during a telephonic conference with the Court, Plaintiff admitted that he had never filed a personal grievance with the IGRP regarding the timely administration of insulin and/or facility lockdowns. (Tr. 7-8, 10). Presumably for that reason, Plaintiff also failed to complete the section of his form complaint designed to elicit information concerning his efforts to appeal any adverse grievance decision. (Compl. § IV.E.3).

**B.   Procedural Background**

On August 6, 2014, Plaintiff commenced this action by filing the Complaint. (Dkt. #1). Thereafter, on January 5, 2015, Defendants filed a letter requesting a pre-motion conference in light of their anticipated motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, alternatively, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. #14). That same day, the Court issued an Order scheduling a telephonic conference for January 23, 2015, to discuss Defendants' proposed motions. (*Id.*). During this conference, in which both parties participated, the Court directed Defendants to file a motion for summary judgment solely on the issue of administrative exhaustion, rather than a motion to dismiss. (Tr. 10-13).

Following the conference, the Court issued an order establishing the schedule for the contemplated summary judgment motion practice. (Dkt. #16). In response to a query from Plaintiff concerning what other actions were

required to advance his case,[3] the Court issued an order: (i) detailing the existing schedule for summary judgment motion practice; (ii) requiring Defendants to provide Plaintiff with copies of the cases cited in their brief as well as any materials relied upon therein; (iii) explaining Plaintiff's obligations with respect to responding to Defendants' motion; and (iv) outlining the consequences of failing to adhere to the existing schedule. (Dkt. #20).

On March 16, 2015, Defendants filed a motion for summary judgment limited to the issue of administrative exhaustion. (Dkt. #21-27). Copies of Federal Rule of Civil Procedure 56, Local Civil Rule 56.1, and the Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment were included in the papers Defendants served on Plaintiff in connection with their motion. (Dkt. #27). On May 1, 2015, the Court granted Plaintiff an extension to file his opposition in light of his indication that he required additional time to draft a response. (Dkt. #30). The Court granted Plaintiff two more extensions to file his opposition, the first on May 13, 2015 (Dkt. #33), and the second on May 29, 2015 (Dkt. #35). Notwithstanding these extensions, Plaintiff failed to oppose Defendants' motion for summary judgment.

---

[3]  Specifically, Plaintiff submitted a letter to the Court dated February 18, 2015, asking for assistance in moving his case forward. (Dkt. #19). In that letter, Plaintiff expressed concern that AMKC personnel might want to "hide [his] grievances" because he had sued the facility previously. (*Id.*). Given Plaintiff's statements during the call, the Court did not understand Plaintiff to be claiming that AMKC personnel had in fact concealed grievances that he had filed (or, more broadly, impeded his ability to file a grievance), but rather understood him to be expressing a more generalized skepticism of the grievance process. This understanding was confirmed by Plaintiff's failure to oppose Defendants' motion, despite the Court's indication to Plaintiff that he could respond to Defendants' exhaustion arguments by "describing reasons why he believes that he was not required to exhaust his administrative remedies, or providing evidence that he has, in fact, exhausted his administrative remedies." (Dkt. #20 at 1-2).

## DISCUSSION

### A. Applicable Law

#### 1. Summary Judgment Generally

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles* v. *General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)); *see also Vargas* v. *Transeau*, 514 F. Supp. 2d 439, 442 (S.D.N.Y. 2007) (observing that "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment (internal quotation marks and citations omitted)), *aff'd sub nom. Vargas* v. *Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009) (summary order).

Even where, as here, the motion is unopposed, "the moving party must still establish that the undisputed facts entitle him to a judgment as a matter

of law." *Vt. Teddy Bear Co.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted).

### 2. Summary Judgment in *Pro Se* Cases

When considering a motion for summary judgment, a court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson* v. *Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (citing *LaSalle Bank Nat'l Ass'n* v. *Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005)). In a *pro se* case, the court must go one step further and liberally construe the party's pleadings "to raise the strongest arguments that they suggest." *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

*Pro se* litigants are "not excused from meeting the requirements of Local Rule 56.1." *Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009). Nevertheless, even where there is incomplete compliance with the Local Rules, a court retains discretion "to consider the substance of the plaintiff's arguments." *Id.* (citing *Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." (internal quotation marks omitted))); *see also Hayes* v. *County of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of Plaintiff's *pro se* status, the Court overlooks his failure to file a Local Rule 56.1

10

Statement and conducts its own independent review of the record."). The Court has done that here.

### 3. The Prison Litigation Reform Act

The Prison Litigation Reform Act of 1995 (the "PLRA"), Pub. L. No. 104-134, Title VIII, 110 Stat. 1321-71 (1996), *codified as amended at* 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter* v. *Nussle*, 534 U.S. 516, 532 (2002). Inmates must utilize grievance procedures irrespective "of whether the relief sought is offered through those procedures." *Espinal* v. *Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

Exhaustion under the PLRA requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford* v. *Ngo*, 548 U.S. 81, 90-91 (2006). However, the PLRA does not mandate "the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." *Hubbs* v. *Suffolk County Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). A remedy is available under the PLRA when it "afford[s] the possibility of some relief for the action complained of." *Id.*

(internal quotation marks and citations omitted). Accordingly, an administrative remedy is available when a "grievance policy or procedure existed and covered the dispute at hand." *Id.* at 61.

In this Circuit, the failure to exhaust may not necessarily bar an inmate's section 1983 claim. Specifically, in *Hemphill* v. *New York*, 380 F.3d 680 (2d Cir. 2004), the Second Circuit identified three exceptions to the PLRA's "mandatory" exhaustion requirement:

> [i] administrative remedies are not available to the prisoner; [ii] defendants have either waived the defense of failure to exhaust or acted in such a[] way as to estop them from raising the defense; or [iii] special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*Ruggiero* v. *County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). As this Court has previously noted, the continuing vitality of the *Hemphill* exceptions remains an open question after the Supreme Court's decision in *Woodford* v. *Ngo*, 548 U.S. 81 (2006). *See Rambert* v. *Mulkins*, No. 11 Civ. 7421 (KPF), 2014 WL 2440747, at *11 (S.D.N.Y. May 30, 2014) (noting that the "Second Circuit has left unresolved the continuing vitality of the *Hemphill* exceptions in light of the Supreme Court's ruling in *Woodford* v. *Ngo*"); *compare Amador* v. *Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) (recognizing that *Woodford* called the latter two *Hemphill* exceptions into question but declining to resolve the issue), *with Hubbs*, 788 F.3d at 59 (noting that at least one *Hemphill* exception could conceivably excuse a failure to

exhaust, but ultimately refusing to squarely consider the exceptions to the exhaustion requirement).

Finally, the failure to exhaust administrative remedies is an affirmative defense, and, as a consequence, the defendant bears the burden of proving its factual basis, including establishing "that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59 (citing *Mojias* v. *Johnson*, 351 F.3d 606, 610 (2d Cir. 2003)). After the defendant satisfies this burden, the plaintiff may attempt to overcome the PLRA's exhaustion requirement by demonstrating one of the *Hemphill* exceptions. *See Hubbs*, 788 F.3d at 59 (holding that "administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors — for example, threats from correction officers — rendered a nominally available procedure unavailable as a matter of fact"); *Bolton* v. *City of New York*, No. 13 Civ. 5749 (RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015) (requiring plaintiffs to show that they qualify for one of the *Hemphill* exemptions to the PLRA exhaustion requirement); *Hill* v. *Donoghue*, No. 08 Civ. 1045 (JS) (AKT), 2010 WL 3924858, at *1 (E.D.N.Y. Sept. 30, 2010) (noting "a prisoner plaintiff may seek to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies").

**B.   Analysis**

Plaintiff did not exhaust his administrative remedies with respect to either his untimely administration of insulin claim or his improper lockdown claim. Nor has Plaintiff demonstrated that these failures were excused by one

of the *Hemphill* exceptions. Accordingly Defendants' motion for summary judgment must be granted.

As a threshold matter, the conduct underlying Plaintiff's Complaint occurred, if at all, at AMKC between April 2013 and August 2014. (Compl. § II.B, C). During this period, the DOC's IGRP protocols were in effect (Johnson Decl. ¶ 4, Ex. A), as was the CHS's Policy 16 (Lawson Decl. ¶ 4, Ex. A). As previously noted, the IGRP applies when an inmate "[i]s directly and personally affected by an issue, condition, practice, or action relating to [their] confinement," including "grievances or requests concerning correctional staff's alleged interference with medical treatment or access to medical care[.]" (Johnson Decl. Ex A at §§ II.A, IV.B.2.d, App. A). By contrast, Policy 16 encompasses complaints concerning the health care provided by the CHS or its contracted providers. (Lawson Decl. Ex. A). Plaintiff's untimely administration of insulin claim, whether alleged against DOC or non-DOC medical personnel, falls within the purview of either the IGRP or Policy 16. Similarly, Plaintiff's improper lockdown claim is within the scope of the IGRP. Accordingly, Defendants have satisfied their burden of proving that a grievance process existed and applied to the underlying disputes in this case. *See Perez* v. *City of New York*, No. 14 Civ. 07502 (LGS), 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (finding that defendants satisfied their burden of showing that a grievance policy or procedure existed and covered the dispute by submitting a copy of the DOC's IGRP).

What is fatal to Plaintiff's claim is his failure to file a grievance under the IGRP or Policy 16 regarding his allegations that his insulin was improperly administered or that the AMKC was improperly locked down.[4] The declarations submitted in connection with Defendants' motion reveal that a search of the relevant records failed to locate any grievances relating to the allegations underlying this action. (Johnson Decl. ¶ 16; Lawson Decl. ¶ 20). The accuracy of these searches was confirmed by Plaintiff's subsequent admission to the Court that he had not filed an individual grievance relating to the claims underpinning the Complaint. (Tr. 7-8, 10). Accordingly, not only did Plaintiff fail to exhaust the required grievance procedures, but he in fact failed to undertake the antecedent step of invoking the relevant processes. As a consequence, he is procedurally barred from litigating his insulin and improper lockdown claims in this case. *See Torres* v. *New York State Dep't of Corr. Servs.*, 166 F. App'x 510, 512 (2d Cir. 2006) (summary order) (summary judgment properly granted where plaintiff had not filed grievances with respect to the claims alleged in his complaint); *Dolce* v. *Suffolk County*, No. 12 Civ. 108 (JFB) (WDW), 2014 WL 655371, at *4 (E.D.N.Y. Feb. 20, 2014) (granting summary judgment where plaintiff failed to file a grievance); *Smith* v. *City of*

---

[4] In the January 23 conference, Plaintiff indicated that he had participated in a grievance filed on a class-wide basis, but was then advised that he was required to file an individual one. (*See* Tr. 7-8). *See generally Shariff* v. *Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009) ("In light of the provision of New York's IGP that '[a]ll grievances must be filed in an individual capacity' and that '[a]lthough there are issues which affect a class of people, they are not grievable as class actions,' adopting Plaintiffs' position [that a single, class-based grievance suffices for exhaustion purposes] would contravene the clear holding of the Supreme Court.").

15

*New York*, No. 12 Civ. 3303 (CM), 2013 WL 5434144, at *11 (S.D.N.Y. Sept. 26, 2013) (granting summary judgment where plaintiff had not filed a grievance); *Bonds* v. *Allen*, No. 08 Civ. 1202 (SJF) (ARL), 2011 WL 837750, at *2 (E.D.N.Y. Mar. 3, 2011) (granting summary judgment where plaintiff neglected to file a grievance).

Assuming, contrary to the facts, that Plaintiff had actually filed a grievance under either policy, the Court would still be compelled to grant Defendants' motion because there is no evidence that any adverse determination was appealed as prescribed by the IGRP or Policy 16. Exhaustion under the PLRA requires an inmate to "us[e] all steps that the agency holds out, and [to] do[] so properly[.]" *Ruggiero*, 467 F.3d at 176 (internal quotation marks and citations omitted). The IGRP and Policy 16 both establish multi-layer review processes for considering inmate grievances, and the record is clear that Plaintiff failed to complete either process. The failure is evident from Plaintiff's admissions to the Court; it is further confirmed by his failure to complete the portion of his Complaint that sought information concerning (i) "what steps, if any, [were taken] to appeal [an adverse grievance] decision" and (ii) "all efforts to appeal to the highest level of the grievance process." (Compl. § IV.E.3). The failure to respond to these inquiries, coupled with the absence of grievance records pertaining to the allegations underlying the Complaint (including records of appeals), establish that Plaintiff has not exhausted his administrative remedies as required by the PLRA. *See Bolton* v. *City of New York*, No. 13 Civ. 5749 (RJS), 2015 WL 1254769, at *3 (S.D.N.Y.

Mar. 18, 2015) (granting summary judgment where plaintiffs responded "n/a" to the portions of their respective complaints inquiring into "[w]hat steps, if any, did you take to appeal that decision," and asking plaintiffs to "[d]escribe all efforts to appeal to the highest level of the grievance process"); *Timmons* v. *Schriro*, No. 14 Civ. 6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) (granting summary judgment where plaintiffs responded to the questions, "What steps, if any, did you take to appeal that decision," and "Describe all efforts to appeal to the highest level of the grievance policy," by indicating that they had written to the warden); *see also Ghee* v. *Ramos*, No. 13 Civ. 632 (RWS), 2013 WL 7018543, at *1 (S.D.N.Y. Dec. 4, 2013) (granting motion to dismiss where plaintiff failed to complete section of the complaint asking him, "what steps, if any, did you take to appeal that decision?").

Plaintiff may not remedy his failure to comply with the IGRP and Policy 16 by claiming that he wrote the warden to complain about the administration of insulin and the improper lockdowns. (*See* Compl. § IV.G; Dkt. #28). The PLRA requires inmates to follow the procedures established in the applicable grievance program. *See Ngo*, 548 U.S. at 90; *Amador*, 655 F.3d at 96. Here, letters from Plaintiff to the warden fall outside of the framework established by the IGRP and Policy 16 for filing a grievance. (*See* Johnson Decl. Ex. A; Lawson Decl. Ex. A). More fundamentally, "sending letters to persons outside the grievance process is insufficient to establish exhaustion because it is well settled that '[c]omplaints and communications made outside of formal grievance procedures do not satisfy the PLRA's exhaustion requirement.'" *Nji* v.

17

*Heath*, No. 13 Civ. 200 (CM), 2014 WL 6433299, at *4 (S.D.N.Y. Nov. 10, 2014) (quoting *Jones* v. *Rikers Island Care Custody*, No. 07 Civ. 10414, 2010 WL 148616, at *2 (S.D.N.Y. Jan. 14, 2010)); *see Timmons*, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) (observing that it is "well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA"); *Angulo* v. *Nassau County*, 89 F. Supp. 3d 541, 551 (E.D.N.Y. 2015) (noting that "no reasonable factfinder could conclude that plaintiff complied with the first step in the grievance process simply by writing a letter to Sheriff Sposato"); *Mamon* v. *New York City Dep't of Corr.*, No. 10 Civ. 3454 (NRB), 2012 WL 260287, at *4 (S.D.N.Y. Jan. 27, 2012) ("As such, plaintiffs' letters and verbal communications do not obviate their failure to comply with the IGRP's requirements.").

Because Defendants proved that Plaintiff failed to exhaust his administrative remedies, Plaintiff can avoid summary judgment only by qualifying for one of the *Hemphill* exceptions to the exhaustion requirement. *See Hubbs*, 788 F.3d at 59.[5]  Initially, the Complaint offers no explanation for Plaintiff's failure to utilize the grievance procedures available through the IGRP and Policy 16.  (Compl. § IV.F.1).  And Plaintiff, in forgoing any response to Defendants' motion, has proffered no evidence excusing his failure to comply with the applicable grievance procedures.  Finally, this Court's independent review of the record has uncovered no basis for excusing Plaintiff's failure to

---

5       Although far from clear, for purposes of this Opinion the Court assumes that an inmate may still rely on the *Hemphill* exceptions.

18

exhaust his administrative remedies.  In fact, Plaintiff previously filed grievances unrelated to his present claims under both the IGRP and Policy 16, thereby demonstrating his familiarity with the procedures, as well as their availability. (Johnson Decl. ¶ 15; Lawson Decl. ¶ 19). *See Nji*, 2014 WL 6433299, at *5; *Tucker* v. *Demarco*, No. 12 Civ. 4683 (JFB) (GRB), 2014 WL 4175801, at *6 (E.D.N.Y. Aug. 19, 2014).  Accordingly, after considering the allegations in the Complaint, Plaintiff's failure to respond to Defendants' motion, and the evidence before the Court, the Court finds no basis for excusing Plaintiff's failure to exhaust his administrative remedies. *See Timmons*, 2015 WL 3901637, at *3 (granting summary judgment where complaint did not contain any allegations that would excuse plaintiffs' failure to exhaust and plaintiffs failed to set forth facts in a responsive 56.1 statement to excuse their failure to exhaust); *Williams* v. *Ramos*, No. 13 Civ. 826 (VB), 2015 WL 864888, at *3 (S.D.N.Y. Feb. 9, 2015) (summary judgment appropriate where "there [was] no evidence administrative remedies were not practically available to plaintiff, or defendants failed timely to advance [plaintiff's] grievances, and plaintiff ha[d] not argued otherwise"); *Nji*, 2014 WL 6433299, at *5 ("Plaintiff offers no evidence of special circumstances that would excuse him from the exhaustion requirement."); *George* v. *Benbow*, No. 12 Civ. 6365 (PKC), 2014 WL 4979311, at *3 (S.D.N.Y. Oct. 6, 2014) (in an unopposed motion for summary judgment, finding no basis to excuse plaintiffs' failure to exhaust administrative remedies).

## CONCLUSION

For the reasons discussed in this Opinion, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and mark this case closed.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:  November 12, 2015
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Howard Powell
DIN # 14-A-5577
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821-0051